## JENNINGS v. STATE.

No. A-11231.   Oct. 18, 1950.

(223 P. 2d 562.)

348

B. C. Franklin, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J.   This appeal is brought by the plaintiff in error, Marvin Jennings, defendant below, from a judgment and sentence of the court of common pleas of Tulsa county, Oklahoma.  Jennings was charged by information with the offense of disturbing the peace of Mrs. R. G. Mouser, to which he entered a plea of not guilty, waived a jury, and was tried to the court and found guilty, upon which finding the court fixed his punishment at $100 fine and imprisonment in the county jail for 30 days, and entered judgment and sentence accordingly.

The pertinent part of the charge contained in the information is as follows, to wit:

" * * * Gives the Court to understand and be informed that on the 13th day of July, A. D. 1948, and prior to the filing of this information in Tulsa County, State of Oklahoma said defendant in said County, and within the jurisdiction of this court, did unlawfully, wilfully, knowingly and wrongfully, disturb the peace of another, to-wit: Mrs. R. G. Mouser by then and there asking the said Mrs. R. G. Mouser for a date contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State." ·

The charge contained in the information is predicated upon § 1363, Title 21 O.S.A. 1941, the pertinent part of which reads as follows, to wit:

"If any person shall make use of any profane, violent, abusive or insulting language toward or about another person, in the presence or hearing, which language, in its common acceptation, is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to cause a breach of the peace or an assault, every such person shall be deemed guilty of a breach of the peace, and, upon conviction thereof, shall be punished by a fine in any sum not to exceed $100.00, or by imprisonment in the county jail not to exceed thirty days, or by both such fine and imprisonment, at the discretion of the court or jury trying the same."

The defendant's first and second contentions are that the trial court erred in not sustaining his demurrer to the information, and because it failed to state a public offense. The record discloses that the offense was committed on July 13, 1948, and the information thereon filed on July 15, 1948. It further appears that the defendant was arraigned on July 15, 1948, and entered a plea of not guilty to the merits. The case came on for trial on February 28, 1949 and when it was called for trial both the state and the defendant announced ready. Thereafter, when the state was about to introduce its evidence, the defendant made the following announcement:

"Mr. Franklin: I want to file a demurrer. I would like for the record to show that the plea of not guilty is withdrawn for the purpose of filing the demurrer. I am not going to insist on it. Your Honor can overrule it at this time and give me an exception. The Court: Let the record show the demurrer is filed, overruled and exception allowed."

The record further discloses that the demurrer was not filed until the next day. We are of the opinion that under the authorities this objection to the information came too late. As was said in McDermott v. State, 35 Okla. Cr. 416, 418, 250 P. 810, 811:

"It has been frequently held by this court that where a defendant goes to trial without demurring to the indictment or information and objects for the first time when the state offers testimony the objection should be overruled, if by any intendment or presumption the pleading can be sustained. Edwards v. State, 5 Okla. Cr. 20, 113 P. 214; McDaniel v. State, 8 Okla. Cr. 209, 127 P. 358; Wilsford v. State, 8 Okla. Cr. 535, 129 P. 80; Clark v. State, 11 Okla. Cr. 494, 148 P. 676; Ralston et al. v. State, 16 Okla. Cr. 634, 185 P. 831; section 2822, Comp. Stat. 1921 [22 O.S. 1941 § 1068]."

As hereinbefore set out, the case at bar was commenced on July 15, 1948, by filing an information and did not come on for trial until February 28, 1949. The defendant had ample time to object to the information but elected not to do so until after he had announced ready for trial. Under the procedure pursued by the defendant when he announced ready he waived his right to interpose an objection to the information by demurrer. After announcing ready for trial, if the defendant desired to test the sufficiency of the information as defining a public offense, his relief was not by demurrer but was by motion objecting to the introduction of evidence at the time of trial or after judgment in arrest of judgment, all as

provided in Title 22, § 512, O.S.A. 1941, reading as follows:

"When the objections mentioned in Section 5791 appear upon the face of the indictment or information, they can only be taken by demurrer, except that the objection to the jurisdiction of the court over the subject of the indictment or information, or that the facts stated do not constitute a public offense, may be taken at the trial, under the plea of not guilty, and in arrest of judgment."

This was the proper method of attack which the defendant did not elect to employ. He belatedly filed a demurrer, which right he had waived by going to trial. He failed to avail himself of the proper remedy by objecting to the introduction of evidence.

But the defendant in the case at bar may say "I brought myself within the rule by obtaining leave to file a demurrer, and did file a demurrer". The answer to this contention is apparent. Neither the trial court nor this court can change the statutory method of procedure prescribed by the Legislature. As was said in Willis v. State, 64 Okla. Cr. 213, 78 P. 2d 840, 842:

"It follows that we cannot consider the questions argued as to the insufficiency of the information because they were not raised as authorized by statute. This court cannot consider questions that were not raised in the trial court as authorized by statute, unless fundamental error prejudicial to the substantial rights of appellant is apparent. Harry v. State, 59 Okla. Cr. 302, 58 P. 2d 340; Rhodes v. State, 58 Okla. Cr. 1, 49 P. 2d 226; McGaugh v. State, 12 Okla. Cr. 96, 152 P. 140; Clark v. State, 11 Okla. Cr. 494, 148 P. 676."

No fundamental errors prejudicial to defendant's substantial rights appear herein. The filing of the demurrer after announcing ready for trial was therefore a nullity and the defendant stood without a proper chal-

lenge to the information. He was in no better position than was the defendant in Gibson v. State, 85 Okla. Cr. 228, 186 P. 2d 667, 668, wherein this court said:

"By a long line of decisions, it has been held that where the information has not been challenged by demurrer or motion to quash, and defendant pleads to the information and goes to trial, any objection to the sufficiency of the information should be overruled if by any intendment, inference or presumption, it can be sustained. Edwards v. State, 5 Okla. Cr. 20, 113 P. 214; Ex parte Spencer, 7 Okla. Cr. 113, 122 P. 557; Brown v. State, 33 Okla. Cr. 217, 242 P. 1065; Chamberlain v. State, 42 Okla. Cr. 410, 276 P. 507; Knight v. State, 48 Okla. Cr. 335, 291 P. 142; Smith v. State, 79 Okla. Cr. 151, 152 P. 2d 279. * * *"

Further therein, quoting from Price v. State, 9 Okla. Cr. 359, 131 P. 1102, 1104, it is stated:

"Under the old common-law doctrine of strictly construing criminal law and all proceedings in criminal cases, and that an indictment or information should be certain to a certain extent in every particular, the objection now urged in this information would undoubtedly be good. But these doctrines have long since been repudiated in the state of Oklahoma. It is true that an indictment should be reasonably certain as to the offense charged in order that the defendant may not be surprised and may be able to prepare to make his defense, and also to enable him to plead a judgment of acquittal or conviction in bar to a subsequent prosecution for the same offense. This is all that a defendant is in reason and justice entitled to. If an indictment is couched in such language as to enable a person of common understanding to know what is intended, it is all that the law requires."

We do not believe the defendant was surprised or could have misunderstood what was intended. And, understanding, he was able to prepare his defense, and to plead either an acquittal or conviction as a bar to a sub-

sequent prosecution for the same offense. He could ask no more.

Moreover, the defendant's demurrer was filed under conditions upon which this court frowns. The record reveals that he made no presentation of the demurrer to the court, and no argument in support thereof but suggested to the trial court that he would not insist on it and that it be overruled, with an exception. The defendant was attempting to hide behind the proverbial log. This court does not approve of such tactics in the trial of a criminal case. As was said in Wingfield v. State, 89 Okla. Cr. 45, 205 P. 2d 320, 331:

"* * * it appears that counsel for the defendant were 'laying behind a log' which practice we do not approve. It takes unfair advantage of the trial court and the State. It is an attempt to create a point by technical silence which if urged would be obviated and the technicality destroyed. Such conduct is similar to complaining about the court's failure to instruct on a certain feature of a case, without at the time of trial suggesting the necessity of such an instruction. This court has often said it will not permit that kind of contention to prevail. Likewise we are of the opinion that since this contention relative to the failure of the special county attorney and prosecutor to take an oath was never argued to the court, merely filing a protest which did not clearly disclose such grounds but from which such argument might have been made, but was not made, does not amount to a valid presentment and objection. To hold otherwise would compel us to look at form and not at substance. We are therefore of the opinion that this ground was waived by failure to present the same to the trial court so that he could intelligently pass upon the objection hidden in the protest, but never disclosed to the trial court until the filing of the motion for new trial. We do not feel constrained to make of criminal procedure a game, where the trial court must match wits with the lawyers in an effort to ascertain hid-

den purposes, which they may not choose to disclose, in order to gain future advantage."

It is apparent had the defendant filed, presented and urged the grounds of the demurrer at the proper time, if the information was defective the same could have been amended to meet the objection. The trial court in full discharge of his judicial responsibilities should have advised the defendant his demurrer was not proper at that stage of the proceedings and should have directed him that under the provisions of Title 22, § 512, O.S.A. 1941, supra, his proper remedy at that time was by objection to the introduction of evidence or in arrest of judgment. Thus it appears that the defendant was attempting to lay behind a log that had been washed from under him by his own dereliction and delay, in not pursuing the remedy at the proper time as provided by statute, Title 22, § 504, O.S.A. 1941. As was said in Willis v. State, supra:

"The defendant may take advantage of a defective information by demurring thereto before the trial, by objecting to the introduction of evidence on the ground that the facts stated do not constitute a public offense, or by motion in arrest of judgment."

While it is true that the provisions of Title 22, § 504, O.S.A. 1941, provide that one of the questions that may be raised in a demurrer is that the facts stated do not constitute a public offense, the demurrer as such must be filed before the defendant announces ready for trial. Thereafter the objection that the "facts stated do not constitute a public offense" must be availed of as is provided in Title 22, § 512, O.S.A. 1941, supra.

Finally, on this point, a case involving a similar objection to the sufficiency of the information was decided by this court in Henderson v. State, 52 Okla. Cr. 427, 6 P. 2d 15, 16. Therein the defendant was tried and con-

victed of a breach of the peace by using obscene and threatening language in the presence of another. The information was based upon the same provisions of the statute as hereinbefore quoted. It was contended the information was defective in that it was insufficient to constitute a public offense. This contention was predicated upon the fact that the information failed to set out the language used and that the allegation therefore was a mere conclusion. In the body of the opinion the court expressed itself relative to this contention as follows:

"It is argued the information is defective in failing to set out the language used and that the allegation is a mere conclusion, citing sections 2555 and 2556, Comp. Stat. 1921 [22 O.S. 1941 §§ 401, 402], and authorities. The cases cited are to the general effect that, in charging an offense, the description of the acts alleged to constitute the crime must be set out with such particularity as to acquaint the accused with the particular offense against which he is to defend. These cases state the sound rule of law, but it is equally well settled that, where a defendant charged with an offense does not interpose a demurrer, but for the first time objects to the information when the state attempts to introduce testimony, the objection should be overruled, if by any intendment or presumption the information can be sustained. True, the information does not set out the language alleged to be obscene and threatening, but, in the absence of a demurrer before the state offers testimony, defendant must be held to have waived any more specific allegation, and, indulging the intendments and presumptions, the information is sufficient to withstand an introduction of evidence. McDermott v. State, 35 Okla. Cr. 416, 250 P. 810."

Therefore, in the case at bar, indulging the same reasonable intendments and presumptions in favor of the information we must determine the sufficiency of this information. Certainly the information in the case at bar is not a model because of the known facts, at the time the

information was drawn. It would have been much better to have alleged that the defendant disturbed the peace of Mrs. R. G. Mouser "by then and there asking the said Mrs. R. G. Mouser for a date for the express purpose of consummating an unlawful act of sexual intercourse for a cash consideration." Therein lay the evil of this situation. There could be no crime in asking for a date in a legitimate, restricted sense, unaccompanied by unlawful intent such as existed herein. Such allegation being made, there could then have been not the slightest basis for the contention now made by the defendant as to the sufficiency of the information.

Notwithstanding this, however, we are of the opinion that the defendant waived a more specific allegation, and indulging the intendments and presumptions to which the information is entitled, we believe it sufficient to state a public offense, and support the conviction in this case. Here, the information alleges the day, the place, the person of the defendant and that the said defendant did unlawfully, knowingly and wrongfully disturb the peace of another, to wit, Mrs. R. G. Mouser, by asking her, a married woman, for a date. Much play is made in the brief of the defendant upon the word "date" and its connotation. It is apparent in the information that Mrs. Mouser was a married woman and that the defendant was not her husband. This court indulging all the necessary intendments and presumptions in favor of the information would conclude that when a man not the husband of the complainant asks for a date, such conduct is susceptible to an interpretation of immoral implication and design. Likewise, the same would be true if a married man asked a single woman for a date. We would be warranted in concluding that such conduct might be for the purpose of consummating an evil design or pur-

pose. Here, the facts, and confession of the defendant clearly show an evil design.

Counsel for the defendant injects the question of racial prejudice into the case indicating that the conviction is due to the fact that the defendant was a Negro and the complaining witness, Mrs. Mouser, a white woman. This court desires here and now to allay any such contentions with reference to this court and this opinion. We are of the opinion that the situation so far as this court is concerned would be no different if a self-respecting Negro woman were accosted by a white man under the same circumstances and conditions as herein involved. Such a situation, regardless of race, color, or creed, would be calculated to arouse to anger the person to whom it is spoken or addressed, and cause a breach of the peace, or possibly an assault. In either event, this court will look at the parties as they appear at the bar of justice stripped of their race, color and creed.

In the case at bar, that the suggestion did arouse the anger of Mrs. Mouser is amply evidenced by the fact of the prosecution herein. If such were not the case the matter would have died with the suggestion. Therefore, under the reasonable intendments and presumptions to which this information is entitled, we are of the opinion that the same is sufficient to state a public offense.

The last contention urged by the defendant is that the court erred in not sustaining his demurrer to the state's testimony. The record in this connection discloses that the defendant, an employee of a filling station, only casually known to Mrs. Mouser, delivered Mrs. Mouser's automobile to her at the Mid-Continent Refinery. On the way back to the station, with no one else in the car, defendant said in substance to Mrs. Mouser, "If I tell you something, will you not tell anybody"? Mrs. Mouser replied,

"I don't know, what is on your mind", to which the defendant responded, "Well, Leta, I will just give you $10 for a date, I am just a poor, old working colored boy and you a white girl, but I will give you $10 for a date". Whereupon Mrs. Mouser told him, "What do you think I am". The evidence in this connection further discloses that the defendant in September, 1946, prior to the date herein alleged, had written Mrs. Mouser a note found in her jacket pocket. This note contained the following language to wit, "Please don't say anything about this. I really like you and will give you $10 for a date. $10 in cash, just think". Mrs. Mouser explained that she did not suspect the defendant as the writer of the note, until the language employed in the latter instance disclosed such marked similarity to that employed in the note. This evidence was objected to presumably on the theory the same was too remote and disconnected. In Bunn v. State, 85 Okla. Cr. 14, 184 P. 2d 621, 622, it was said in part:

"Where the trial court cannot clearly see a visible connection between the alleged other offenses to the one charged, he should refuse to admit the other offenses in evidence."

In our opinion this evidence was clearly admissible, there being a visible connection between the two situations. Here in fact the proposition made and that conveyed in the note was part and parcel of the same design, scheme and plan. The defendant in a written confession, offered in evidence, admitted both of these attempted affairs with Mrs. Mouser, with the confessed purpose that the date would have been for the purpose of sexual intercourse. In this connection the defendant contends that the state failed to prove any manifestation of anger on the part of Mrs. Mouser. He says she did not testify that

she got mad at the defendant, "she did not testify that the remark made her mad, or that they insulted her". We are of the opinion that proof of the offense herein alleged was not to be established by proof of the appearances of the victim's responses alone but more by proof of the language employed, and whether it was designed and calculated to arouse the anger of the person addressed. In this connection see Weitz v. State, 70 Okla. Cr. 35, 104 P. 2d 445:

"Whether the language alleged to have been used by the defendant was profane and calculated to arouse the anger of a person to whom it was addressed, and provoke a breach of the peace, depends upon the relation of the parties, the circumstances under which the language was used, and the manner of the speaker, which are all questions of fact for the jury to determine."

The court will take judicial notice of the fact that some persons are possessed of greater poise and self-control than others and might not outwardly register anger or display evidence of insult, until a complaint was lodged with a duly constituted authority as in the case at bar. The gist of the offense is not the use of language resulting in anger or an assault, but the use of language calculated to arouse anger, cause a breach of the peace, or an assault. Under the foregoing statute, when proof of the use of such language resorted to in the presence of a person to whom the language is addressed, has been established, proof of the offense is complete. The evidence of the language herein used is sufficient to bring the case within the provisions of § 1363, Title 21 O.S.A. 1941.

This court has repeatedly said that where there is any competent evidence reasonably tending to sustain the allegations of the information, the court should not sustain a demurrer to the evidence. Weitz v. State, supra;

360

Smith v. State, 44 Okla. Cr. 254, 280 P. 317; Jackson v. State, 42 Okla. Cr. 86, 274 P. 696, and numerous other decisions  In this case a jury was waived, but the same rule applies where the case is submitted without a jury to the court.  As was said in Heald v. State, 78 Okla. Cr. 130, 145 P. 2d 206:

"Where jury is waived, judgment of trial court upon a disputed question of fact will be sustained on appeal where there is competent evidence in the record to support his finding."

For all of the above and foregoing reasons, the judgment and sentence herein is accordingly affirmed.

JONES, P. J., and POWELL, J., concur.